UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONELLE McCROREY, *et al.*,

Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*,

Defendants.

No. C12-1630RSL

ORDER GRANTING CERTAIN DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on certain defendants' "Revised Motion to Dismiss Plaintiffs' Complaint" (Dkt. # 18) and "Defendant Flagstar Bank FSB's Motion to Dismiss Plaintiffs' Complaint" (Dkt. # 20) pursuant to Fed. R. Civ. P. 12(b)(6). Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

## BACKGROUND

In September 2007, plaintiffs executed a promissory note for $413,250.00, payable to the order of Simply Mortgage, Inc. Dkt. # 3, Ex. A.[1] The note was secured by a deed of trust on real property located at 1820 Creswell Rd., Snohomish, Washington. Dkt. # 3, Ex. B. The

[1] At some unknown point in time, the note was endorsed over to defendant Flagstar Bank, F.S.B. Dkt. # 19-1. The Court has taken judicial notice of the documents submitted with the parties' memoranda.

deed of trust lists Simply Mortgage as the lender, Joan H. Anderson (on behalf of defendant Flagstar Bank, F.S.B.) as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as both the beneficiary of the trust and the "nominee" for the lender. Id.

Plaintiffs began having trouble making their mortgage payments toward the end of 2008. On January 26, 2009, MERS purportedly assigned its interests as beneficiary of the deed of trust to Flagstar Bank, which promised to modify plaintiffs' loan if they successfully made three consecutive loan payments of $3,500 each (almost $400 more per month than plaintiffs were originally paying). Plaintiffs made the three payments, but were advised that they had to make a fourth $3,500 payment in order to receive the modification. Shortly after that payment was made, plaintiffs learned that Flagstar Bank had sold their loan to Nationstar and that they had to restart the loan modification discussions with the new servicer/owner.

When plaintiffs applied for a loan modification from Nationstar, they were told that their collective income was too high to receive a modification. When plaintiff Jeff McCrorey was laid off in late 2010, they became eligible for a modification. Unfortunately, the terms offered by Nationstar included monthly payments of $5,700, nearly $2,600 more per month than their original payment amount.

On August 24, 2010, MERS, this time acting as the nominee for Simply Mortgage, Inc., assigned the lender's beneficial interest in the deed of trust to Nationstar. Dkt. # 3, Ex. D. Nationstar subsequently appointed Quality Loan Service Corporation of Washington as successor trustee. Dkt. # 3, Ex. E. Quality Loan, acting as Nationstar's attorney in fact, assigned Nationstar's beneficial interest in the deed of trust to defendant Federal National Mortgage Association ("Fannie Mae") on September 14, 2010. Nevertheless, on December 30, 2010, Quality Loan accepted Nationstar's declaration under penalty of perjury stating that Nationstar was the beneficiary of the deed of trust and the actual holder of the underlying promissory note. The September 20160 assignment to Fannie Mae was not recorded in the Snohomish County property records until June 24, 2011.

In mid-June 2011, plaintiffs' house was foreclosed upon and sold at a trustee's sale to Fannie Mae. The trustee generated a deed of sale identifying Fannie Mae as both the foreclosing beneficiary and the grantee. That deed was recorded on June 24, 2011. Dkt. # 19-3.

Plaintiffs filed this action in state court more than a year after the foreclosure sale. They allege that MERS' involvement in the original deed of trust has created defects in assignments that made later attempts to foreclose the property under the Washington Deed of Trust Act ("DTA") invalid and violated the Washington Consumer Protection Act ("CPA"). The DTA and CPA claims are asserted against all defendants. Plaintiffs also allege that Flagstar Bank breached its promise to modify plaintiffs' loan and that Nationstar breached the covenant of good faith and fair dealing while bargaining regarding a loan modification. Defendants seek dismissal of plaintiffs' claims under Rule 12(b)(6).

## DISCUSSION

### A. Standard for Motion to Dismiss

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations of the complaint are accepted as true and construed in the light most favorable to plaintiff. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). The question for the Court is whether the well-pled facts in the complaint and judicially-noticed documents sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

### B. Deed of Trust Act Claim Against All Defendants

Washington courts have held that a borrower or grantor of a deed of trust who fails

to employ the procedures of the Deeds of Trust Act ("DTA") to enjoin a trustee's sale waives the right to contest the underlying debt or the foreclosure process. Plein v. Lackey, 149 Wn.2d 214 (2003); Brown v. Household Realty Corp., 146 Wn. App. 157 (2008); CHD, Inc. v. Boyles, 138 Wn. App. 131 (2007). These decisions are based on the following three goals of the DTA: (i) to promote an efficient and inexpensive nonjudicial foreclosure process; (ii) to ensure an adequate opportunity for interested parties to prevent wrongful foreclosure; and (iii) to secure the stability of land titles. Brown, 146 Wn. App. at 169.

After these cases were decided, however, the legislature modified the waiver doctrine to exempt claims for common law fraud or misrepresentation, violations of Washington's Consumer Protection Act ("CPA"), failure by a trustee to comply with the DTA, and violations of RCW 61.24.026. Thus, these types of claims may be brought even when the borrower or grantor failed to enjoin the foreclosure sale. RCW 61.24.127(1). Although these claims can be fled post-foreclosure, they will not affect the validity or finality of the foreclosure sale or operate to encumber or cloud the title to the property. RCW 61.24.127(2)(c) and (e).

The only type of DTA claim that may be asserted post-foreclosure is a claim against the trustee for failing to materially comply with the provisions of the DTA. RCW 61.24.127(1)(c). Plaintiffs have not alleged any wrongdoing on the part of the successor trustee, Quality Loan Service Corporation. In fact, the complaint is virtually silent regarding the initiation and pursuit of the nonjudicial foreclosure that ultimately ended in the trustee's sale.[2] Any wrongdoing alleged on behalf of Flagstar Bank, the original trustee under the deed of trust, relates to its conduct as servicer of plaintiffs' mortgage rather than its role as trustee under the

---

[2] The trustee's obligations under the DTA are fairly limited: it must act in good faith toward the parties to the loan (RCW 61.24.010(4)), and it must assure itself that the beneficiary is the owner of the promissory note before issuing a notice of trustee's sale (RCW 61.24.030(7)(a)). Although there are documents suggesting that Quality Loan could not reasonably have relied on the December 30, 2010, beneficiary declaration of ownership, plaintiffs have not alleged bad faith or otherwise alleged that Quality Loan failed to materially comply with the requirements of the DTA.

DTA.[3] Plaintiffs have not, therefore, alleged facts giving rise to a plausible claim for relief under the one type of DTA claim preserved by RCW 61.24.127(1)(c).

**C. Consumer Protection Act Claim Against All Defendants**

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A private cause of action exists under the CPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986). The purpose of the CPA is to protect consumers from harmful practices, which is why plaintiff must allege an actual or potential impact on the general public, not merely a private wrong. Lightfoot v. Macdonald, 86 Wn.2d 331, 333 (1976). Claims under the CPA are not waived simply because the foreclosure sale has already occurred. RCW 61.24.127(1)(b).

The CPA does not define "unfair or deceptive" for purposes of the first element. Whether an act is unfair or deceptive is a question of law. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150 (1997). Washington courts have held that a deceptive act must have the capacity to deceive a substantial portion of the population (Sing v. John L. Scott, Inc., 134 Wn.2d 24, 30 (1997)) and "misleads or misrepresents something of material importance" (Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226 (2006)). In Bain v. Metropolitan Mortg. Group, Inc., 175 Wn.2d 83, 117 (2012), the Washington State Supreme Court found that characterizing a non-holder (in that case, MERS) as the beneficiary in the deed of trust when it knew or should have known that it must have actual possession of the note to be the beneficiary under Washington law has the capacity to deceive

[3] Because Flagstar has no potential liability under the DTA, the Court need not consider its preemption argument in the context of this claim. See Dkt. # 20 at 7. The Court notes, however, that if Flagstar were correct and federal law preempted the DTA, there would be no authority or procedures by which to conduct nonjudicial foreclosures in the first place

for purposes of a CPA claim. The Supreme Court also found that the third element, public interest, was presumptively met because MERS "is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide." Bain, 175 Wn.2d at 118. Defendants offer no facts or analysis that could support a contrary finding in this case.

The issue, then, is whether plaintiff can show injury caused by deceptive representations regarding MERS' status as beneficiary and the effect of subsequent transfers and authorizations to act. "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57 (2009). Plaintiffs may not, therefore, recover for any emotional distress caused by defendants' deceptive acts. With regard to any claimed damages, "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor/Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84 (2007).

Plaintiffs allege that "defendants' actions have caused the plaintiffs to face threats of eviction and destruction of their credit." Dkt. # 1 at 15. Threats of eviction, without more, are more akin to an emotional harm and are not compensable under the CPA. Even if the Court assumes plaintiff is asserting the default, the related impact on their credit, and the foreclosure as their injuries, these harms cannot be laid at MERS' door. MERS' identification as the beneficiary on the deed of trust and its subsequent assignment of whatever interest it may or may not have had did not cause the loss of plaintiffs' home or the impairment of their credit. Plaintiffs began having trouble making their mortgage payments in late 2008: it was the failure to meet their debt obligations that led to a default, the destruction of credit, and the foreclosure. Although the misidentification of a party as the beneficiary may give rise to compensable damages (if, for example, the borrower's attempts to negotiate a modification fail because he is bargaining with the wrong entity or the borrower incurs costs while trying to locate the actual

holder of the original promissory note), the misidentification itself does not cause the type of injuries alleged in the complaint.[4] Plaintiffs have not, therefore, asserted a viable cause of action under the CPA.

**D. Breach of Contract Against Flagstar**

Plaintiffs allege that Flagstar promised that if plaintiffs made three trial payments of $3,500 each, plaintiffs would receive a modification of the terms of their loan. Complaint (Dkt. # 1) at ¶ 69. Plaintiffs also allege that Flagstar breached that promise, causing them harm. Complaint (Dkt. # 1) at ¶ 70-72.

Flagstar argues that plaintiffs failed to satisfy a condition precedent and are therefore barred from asserting a breach of contract claim. Plaintiffs' contract claim is not, however, based on the deed of trust they signed in September 2007. The notice-and-cure provision contained therein is therefore irrelevant.

To the extent Flagstar argues that plaintiffs' breach of contract claim is preempted, it does so in a conclusory fashion. Whether a state law claim against a federal savings association is preempted involves a multi-step analysis.

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be

---

[4] In their opposition memorandum, plaintiffs suggest that they were injured when they unknowingly attempted to obtain a loan modification from two entities who did not, in fact, hold the original promissory note. Dkt. # 21 at 11. This injury is not alleged in the complaint. Nor are there any facts suggesting that Flagstar or Nationstar were not the appropriate entities with which to negotiate a modification. While the allegations of the complaint are scarce, it appears that they were the servicers and recipients of payments during the relevant time periods. There is no requirement that a servicer have physical possession of the original promissory note unless and until it initiates the nonjudicial foreclosure process set forth in the DTA.

To the extent plaintiffs are asserting a CPA claim based on Flagstar's breach of promise to modify the loan and Nationstar's unwillingness to honor Flagstar's commitment (Dkt. # 21 at 11), there are no facts from which one could infer that this lamentable situation affects the public interest.

> shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. at 50,966-67. Simply declaring that all of plaintiffs' state law claims fall within the scope of 12 C.F.R. § 560.2(b) without any attempt to evaluate the specific law or claim at issue and its effect, if any, on lending, is unhelpful. Flagstar offers no authority for the extraordinary proposition that federal savings associations may breach their contractual obligations with impunity because their promises cannot be enforced under state contract principles. Unlike the cases cited by defendant, plaintiffs' contract claim is based on allegations of an express promise and its breach, not simply on Flagstar's unwillingness to enter into a loan modification or other variants on a tort cause of action.

Based on the facts alleged and the documents presented by the parties, the Court finds that plaintiffs have adequately stated a breach of contract claim. Plaintiffs allege that they were promised a loan modification,[5] that they made four payments in excess of their original monthly payment amount in reliance on the promise, and that Flagstar breached the agreement(s). While plaintiffs will, of course, have to prove that such a promise was made, their allegations survive a motion to dismiss.

**E. Breach of Covenant of Good Faith and Fair Dealing Claim Against Nationstar**

Plaintiffs allege that Nationstar failed to negotiate regarding the requested loan modification in good faith. Plaintiffs do not allege that they had a contract with Nationstar, however. The implied covenant of good faith and fair dealing "obligates the parties to cooperate with one another so that each may obtain the full benefit of performance." <u>Badgett v. Sec. State</u>

---

[5] Contrary to Flagstar's assumption, the promise or promises upon which plaintiffs' claim rests appear to have been oral. The allegations of the complaint do not refer to the July 15, 2009, letter submitted by Flagstar, and plaintiffs argue that the fourth $3,500 payment was induced by an explicit promise that a loan modification would follow. Flagstar has not identified any writing regarding the fourth payment.

Bank, 116 Wn.2d 563, 569 (1991). The duty relates only to performance of the terms of an existing contract: there is no "free-floating" duty of good faith that attaches during negotiations or that injects new substantive obligations into the contract. Id. at 569-70. Plaintiffs' claims all relate to the negotiation of a contract, not its performance. The breach of the covenant of good faith and fair dealing therefore fails as a matter of law.

**F. Leave to Amend**

Although all claims against Fannie Mae, Nationstar, and MERS will be dismissed, this action continues as to Flagstar. In this context, leave to amend will not be blindly granted. If plaintiffs believe they can, consistent with their Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, they may file a motion to amend and attach a proposed pleading for the Court's consideration.

For all of the foregoing reasons, the motion to dismiss filed by Fannie Mae, Nationstar, and MERS (Dkt. # 18) is GRANTED. Flagstar's motion to dismiss (Dkt. # 20) is DENIED.

Dated this 25th day of February, 2013.

Robert S. Lasnik
United States District Judge